Irving BARR, et al., Plaintiffs,

v.

McGRAW–HILL, et al., Defendants.

David B. HANNA, et al., Plaintiffs,

v.

McGRAW–HILL, et al., Defendants.

Tom L. KINZENBAW, et al., Plaintiffs,

v.

McGRAW–HILL, et al., Defendants.

Philip BENNETT, et al., Plaintiffs,

v.

McGRAW–HILL, Defendant.

Bruce VOMACKA, et al., Plaintiffs,

v.

McGRAW–HILL, Defendant.

Nos. 87 Civ. 6259 (KC), 88 Civ. 2498 (KC), 88 Civ. 2446 (KC), 89 Civ. 3730 (KC) and 90 Civ. 6938 (KC).

United States District Court, S.D. New York.

July 16, 1991.

James Cohen, New York City, Carl Genberg, Columbus, Ohio, for plaintiffs.

Sullivan & Cromwell, Michael Savage, Gersten Savage Kaplowitz Zukerman & Liebman, New York City, for defendants.

## OPINION AND ORDER

CONBOY, District Judge:

Defendant McGraw–Hill, Inc. ("McGraw–Hill") moves for an order, pursuant to Fed. R.Civ.P. 12(c),[1] dismissing plaintiffs' federal securities claims as time-barred. For the reasons set forth below, the motion is granted.

## BACKGROUND

These five related actions, which have been consolidated for certain purposes, all arise out of the syndication and marketing, in the years 1979 to 1983, of approximately 30 limited partnerships that were intended to acquire and market videotapes to be used in the field of continuing medical education. Each of the limited partnerships was to finance the production of tapes within a given medical subject matter, such as oncology, pharmacology, infectious diseases, and so on. The partnerships were organized by World Video Corporation, whose principals were various individuals located in New York City. They arranged with Hahnemann Medical College in Philadelphia to produce the tapes, which would then be marketed under the auspices of World Video or entities with which it had arranged to perform marketing activities.

World Video contracted to have McGraw–Hill provide appraisals of the master videotapes to be produced by Hahnemann and purchased by the limited partnerships. (*See, e.g., Bennett* Complaint ¶ 8.) The appraisals were all delivered during the years 1979 to 1983. (*See Barr* Second Amended Complaint ¶ 15(b); *Vomacka* Complaint ¶ 13(b); *Bennett* Complaint ¶¶ 8–10; *Hanna* First Amended Complaint ¶ 10; *Kinzenbaw* First Amended Complaint ¶ 9.) The last appraisal was delivered on August 15, 1983. (*Vomacka* Complaint ¶ 18; *see also Kinzenbaw* First Amended Complaint ¶ 9.)

The earliest complaint was filed in the *Kinzenbaw* action in the United States District Court for the Southern District of Ohio (Eastern Division) on December 8, 1986. On June 15, 1987, however, the *Kinzenbaw* plaintiffs filed a notice of voluntarily dismissal without prejudice, and then filed a new action, on July 29, 1987, in the Western Division of the same court. The *Kinzenbaw* action was transferred to this Court on March 30, 1988. The *Bennett* action was commenced in the Western Dis-

---

1. According to its notice of motion, McGraw–Hill is moving "for an order, pursuant to Rule 12(b) (or Rule 56, should the Court choose to treat the motion as such) of the Federal Rules of Civil Procedure, dismissing plaintiffs' federal securities claims...." Because McGraw–Hill has answered the complaints, the motion is properly made pursuant to Rule 12(c). As to McGraw–Hill's suggestion that the Court treat its motion as one for summary judgment, we note that McGraw–Hill's motion is styled as a motion to dismiss—McGraw–Hill's motion relies solely on the pleadings, and does not include a Local Rule 3(g) statement, as would be required on a motion for summary judgment. Moreover, plaintiffs apparently understood McGraw–Hill's motion as being one to dismiss. *See, e.g.,* Pltf. Mem. at 5 (referring to McGraw–Hill's motion as a motion to dismiss). Accordingly, the Court declines McGraw–Hill's invitation to treat its motion as one for summary judgment.

trict of Michigan on April 20, 1987, and transferred to this Court in May 1989. The *Barr* action was commenced in this Court on August 2, 1987. On October 30, 1987, the *Hanna* plaintiffs commenced their action in the Southern District of Ohio; the action was transferred along with *Kinzenbaw* on March 30, 1988. Finally, on July 12, 1989, the *Vomacka* action was commenced in South Dakota; it was transferred to this Court in late 1990.

The complaints do not allege with complete clarity the dates when the plaintiffs allegedly purchased limited partnership units, but as well as one can tell from the complaints, all of the units had been purchased by December, 1983 and most of them had been purchased in the years 1980 through 1982. *See Barr* Second Amended Complaint, Exhibit A (all units purchased by December 30, 1981); *Vomacka* Complaint, Exhibit A (latest purchase date December 1983); *Bennett* Complaint ¶¶ 8–10 (latest purchase date December 31, 1981); *Hanna* First Amended Complaint ¶ 6 (no dates given), ¶ 10 (latest McGraw–Hill report rendered August 15, 1983), ¶ 20 (plaintiffs identified as "investors in the partnerships" by fall of 1983); *Kinzenbaw* First Amended Complaint ¶ 6 (no dates given), ¶ 9 (latest McGraw–Hill report rendered August 15, 1983), ¶ 18 (plaintiffs referred to as "investors in the partnerships" by fall of 1983).

Plaintiffs' allegations as to when they had notice of their claims against McGraw–Hill vary from complaint to complaint. *See Barr* Second Amended Complaint ¶ 54 (no notice of any claim until April 1987); *Vomacka* Complaint ¶ 20 ("Plaintiffs had no reason to suspect that they had been victims of a fraud until after January 1, 1987."); *Bennett* Complaint ¶ 16 (plaintiffs did not have "inquiry notice" until after 1984); *Hanna* First Amended Complaint ¶ 31 (no "inquiry notice" until March 1985 at the earliest); *Kinzenbaw* First Amended Complaint ¶ 29 ("The earliest a limited partner received notification from the IRS disallowing deductions and asserting that the appraisal was 'grossly overvalued' was in March of 1984. Most of the investors were not so notified until 1985 and some not

until the past few months. [Thus] Plaintiffs were not put on 'inquiry notice' until—at the earliest March of 1984....").

McGraw–Hill now moves to dismiss plaintiffs' securities fraud claims, brought pursuant to § 10(b) of the Securities Exchange Act of 1934 ("the 1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, on the ground that they are barred by the statute of limitations. McGraw–Hill initially moved in the wake of the Second Circuit's decision in *Ceres Partners v. GEL Associates*, 918 F.2d 349 (2d Cir.1990), in which the Court adopted a uniform federal statute of limitations for § 10(b) and Rule 10b–5 claims. The Court held that such claims must be brought within one year after the discovery of the facts constituting the violation and in no event later than three years after such violation (the "one-year/three-year" rule). *Id.* at 364. The Court's ruling set aside the longstanding practice in this Circuit of borrowing the most closely analogous state statute of limitation. The Court expressly left open the question of whether its newly announced rule should be applied retroactively. *Id.*

Shortly after the *Ceres* decision was announced, McGraw–Hill filed its motion to dismiss, arguing that the new one-year/three-year rule should be applied retroactively in this action. McGraw–Hill applied the three-part test set out in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), for determining whether a newly announced rule of decision should be applied retroactively. The test is as follows:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that we must ... weigh the merits and demerits of each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.... Finally,

we have weighed the inequity imposed by retroactive application, for where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity.

*Id.* at 106–07, 92 S.Ct. at 355 (citations and internal quotations omitted).

McGraw–Hill argued that all three factors favor retroactive application of the new one-year/three-year rule. First, McGraw–Hill contended that plaintiffs cannot establish that *Ceres* overrules "clear past precedent on which litigants may have relied" because, according to McGraw–Hill, none of the plaintiffs can demonstrate that they had claims timely under *Ceres* which became stale because they relied on a longer state statute of limitations and acted accordingly. Second, McGraw–Hill argued that retrospective application to this action would further the purpose of the new one-year/three-year rule because it would avoid having this Court apply numerous inconsistent state statutes of limitations to plaintiffs in the various actions. Third, McGraw–Hill suggested that the equities favor retroactivity because the parties have engaged in a relatively small amount of discovery, and because "it is not inequitable to apply a statute of limitations which, by plaintiffs' own admission, would have barred plaintiffs' claims if it had been known to be the rule at the time plaintiffs say they discovered their claims." Def. Mem. at 17.

Before plaintiffs had a chance to respond to McGraw–Hill's motion, the Second Circuit announced its decision in *Welch v. Cadre Capital*, 923 F.2d 989 (2d Cir.), *vacated and remanded sub. nom. Northwest Savings Bank, PaSA v. Welch,* — U.S. —, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991), which addressed the question left open in *Ceres:* whether the one-year/three-year rule should apply retroactively. Turning to the three-part *Chevron* test, the Court observed at the outset that, while a proponent of a prospective-only application of a new rule must satisfy the first *Chevron* factor, once "the proponent of nonretroactivity clears the first hurdle, the court then proceeds to the 'balancing process demanded by the second and third factors.'" *Id.* at 994 (quoting *Kremer v. Chemical Construction Corp.,* 623 F.2d 786, 789 (2d Cir. 1980)). The Court then concluded that *Ceres,* which overrules well-established precedent, meets the threshold requirement for nonretroactive application. *Id.* at 994. The Court emphasized that "the first prong of the *Chevron* test requires only a prior rule on which plaintiffs 'may' have relied, and does not create a test of actual reliance." *Id.* at 993 n. 5.

As to the second *Chevron* factor, the Second Circuit concluded that retroactive application of the new and shorter limitations period did not further the purpose of the new rule. *Id.* at 995. The Court rejected a mechanical approach by which the "the rule in question" is seen as the new limitations period itself, so that retroactive application will always further the new rule. *Id.* at 994. Instead, the Court, noting that application of a new statute of repose could not affect the conduct of plaintiffs where the new rule is announced after expiration of that period, and that statutes of limitations serve primarily individual, rather than institutional, interests, concluded that "application of a limitations period not yet in existence at the time suit was commenced clearly does not further either" the defendants' interest in repose or the remedial and deterrent purposes of the particular cause of action. *Id.* at 995. Moreover, the Court did not believe that "permitting plaintiffs' suit to be maintained will 'frustrate' the 'schema of the 1934 Act.'" *Id.* at 995 (quoting *Welch v. Cadre Capital,* 735 F.Supp. 467, 484 (D.Conn. 1989)).

As to the third *Chevron* factor, the Court determined that the equities favored the plaintiffs. The Court emphasized that "defendants' active concealment of fraud, rather than anything attributable to the plaintiffs, caused the initial three-year delay between violation and discovery of the fraud." *Id.* at 995. Moreover, the delay was not "the result of procedural maneuvering designed to achieve a tactical advantage." *Id.* Although the Second Circuit

did not explicitly discuss, in considering the equities, whether the *Welch* plaintiffs actually relied on the old limitations period, we note that, at the time when the plaintiffs discovered the fraud, they had two months, under the new one-year/three-year rule, to file their cause of action.[2] Perhaps relying on the then-applicable two-years-from-discovery limitations period, however, the *Welch* plaintiffs waited until October 1988 to file their complaint.

Relying on *Welch,* plaintiffs here argue in their opposition to McGraw–Hill's motion to dismiss that the new one-year/three-year rule should not be applied retroactively to plaintiffs' § 10(b) and Rule 10b–5 claims. As to the first *Chevron* factor, plaintiffs contend that whether they "may have relied" on the old limitations rule "is a factual inquiry that cannot be resolved on the basis of McGraw–Hill's motion to dismiss." Pltf. Mem. at 5. Plaintiffs simply quote extensively from the *Welch* discussion on the second factor. *Id.* at 5–6. As to the third factor, plaintiffs cite a few other cases and make a general policy argument, but do not identify any specific factors that weigh in favor of nonretroactivity in this action.

While McGraw–Hill's motion was pending, the Supreme Court heard oral argument in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) which presented the issue of whether the Court should adopt a uniform federal limitations period for § 10(b) and Rule 10b–5 claims, and if so, whether the Court should adopt the one-year/three-year rule adopted by, *inter alia,* the Second Circuit in *Ceres.* Accordingly, this Court awaited the Supreme Court's decision in *Lampf* before adjudicating McGraw–Hill's motion to dismiss on statute of limitations grounds. On June 20, 1991, the Supreme Court handed down its decision in *Lampf,* 501 U.S. ——,

111 S.Ct. 2773, 115 L.Ed.2d 321 On June 28, 1991, the Court granted the petition for certiorari filed in *Welch,* and vacated and remanded to the Second Circuit for reconsideration in light of *Lampf* and *James B. Beam Distilling Co. v. Georgia,* 501 U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), in which the Court considered whether to apply a new constitutional rule retroactively. *See Northwest Savings Bank, PaSA v. Welch,* —— U.S. ——, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991). We now consider McGraw–Hill's motion to dismiss in light of these recent Supreme Court decisions.

### DISCUSSION

In *Lampf,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), the Supreme Court determined that a uniform federal statute of limitations should be applied to § 10(b) actions, and adopted the "1-and-3–year structure" set forth in § 9(e) of the 1934 Act, 15 U.S.C. § 78i(e). Thus, the Court held that "[l]itigation instituted pursuant to § 10(b) and Rule 10b–5 therefore must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Id.,* 501 U.S. at ——, 111 S.Ct. at 2782.

It is undisputed that each of the five actions at issue here were instituted more than three years after the alleged § 10(b) and Rule 10b–5 violations. Both the *Barr* and *Bennett* complaints were commenced in 1987, nearly six years after the latest purchase date (December 31, 1981) alleged in the two complaints. The *Vomacka* plaintiffs had purchased their interests by December, 1983, but they did not file their complaint until July 12, 1989, more than five years after the purchases. The plaintiffs in *Hanna* and *Kinzenbaw,* who had purchased their interests by the fall of

---

2. The *Welch* plaintiffs purchased securities in May 1984 and had discovered the fraud by March 1987. Were the new rule to be applied, the plaintiffs thus had until May 1987, three years from the date of purchase, to file their complaint. In suggesting that the plaintiffs had until March 1988 at the latest, one year after the discovery of the alleged fraud, to bring suit, *Welch,* 923 F.2d at 993, the Second Circuit apparently overlooked the fact that, under the one-year/three-year rule, the complaint must be brought within three years of the violation of the securities laws.

1983, did not file their actions until October 30, 1987 (*Hanna*) and July 29, 1987 (*Kinzenbaw*).[3] Because all of the plaintiffs purchased their partnership interests more than three years before they filed their complaints, all of the plaintiffs' § 10(b) and Rule 10b–5 claims are time-barred under the new "1–and–3–year structure" announced in *Lampf.*

Thus, the question that immediately arises is whether *Lampf* must be applied retroactively to the actions before us. Significantly, the Court in *Lampf* applied the new one-year/three-year rule to the action before it. Without discussing the issue or considering the *Chevron* factors, the Court concluded summarily: "As there is no dispute that the earliest of plaintiff-respondents' complaints was filed more than three years after petitioner's alleged misrepresentations, plaintiff-respondents' claims were untimely." —— U.S. at ——, 111 S.Ct. at 2782. We must therefore decide whether we can, based on a *Chevron* analysis, apply *Lampf* prospectively here, despite the fact the Supreme Court, without any consideration of the *Chevron* factors, applied its new rule to the litigants in *Lampf* itself.

In *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (*"Jim Beam"*), the Su-

preme Court faced a similar issue in a different context: the Court considered whether to apply retroactively the new constitutional rule it had announced seven years earlier in *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). In *Bacchus*, the Court held that a state excise tax which distinguished between imported and local alcoholic products violated the Commerce clause. Subsequently, in *Jim Beam*, the Georgia Supreme Court, using a *Chevron* analysis, determined not to apply *Bacchus* retroactively to invalidate a state tax that was valid under pre-*Bacchus* law. The Supreme Court reversed, holding that once the Court has applied a rule of law to the litigants in one case, it must do so with respect to all others not barred by procedural requirements or res judicata. *Jim Beam,* —— U.S. at ——, 111 S.Ct. at 2448. Thus, "it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so." *Id.* at ——, 111 S.Ct. at 2446.[4]

Although *Jim Beam* presented the Court with the question of whether a new constitutional rule should be applied retroactively, *see Jim Beam,* —— U.S. at ——, 111 S.Ct. at 2449 (Blackmun, J., concurring) ("failure to apply a newly declared *constitutional* rule to cases pending on direct

**3.** As we indicated earlier, the *Kinzenbaw* action was initially commenced on December 8, 1986. After defendants moved to dismiss, however, the *Kinzenbaw* plaintiffs voluntarily dismissed their action without prejudice and refiled it on July 29, 1987. A voluntary dismissal without prejudice leaves the situation as if the action had never been filed. *A.B. Dick Co. v. Marr,* 197 F.2d 498, 502 (2d Cir.), *cert. denied,* 344 U.S. 878, 73 S.Ct. 169, 97 L.Ed. 680 (1952); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2367 at 186 (1971). Moreover, the statute of limitations is not tolled by bringing an action that is later voluntarily dismissed. *Bunger v. U.S. Blind Stitch Machine Corp.,* 8 F.R.D. 362 (S.D.N.Y.1948); Wright & Miller, *supra,* § 2367 at 186–187. Thus, in the *Kinzenbaw* action the statute of limitations ran until the second action was commenced on July 29, 1987.

**4.** Six justices favored retroactivity. Justice Souter, announcing the judgment of the Court in an opinion in which Justice Stevens joined, concluded that *Bacchus* should apply retroactively on the narrow ground that "[o]nce retro-

spective application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application." Justices Blackmun, Scalia, and Marshall based their concurrences on a much broader ground, concluding that new constitutional rules should always apply retroactively, thereby effectively confining *Chevron* to whatever non-constitutional new rules the Supreme Court announces, if not abrogating *Chevron* altogether. Justice White, maintaining that prospective application of a new rule is appropriate in some cases, agreed with Justice Souter that retrospective application of *Bacchus* was required in *Jim Beam* by the application of the new rule to *Bacchus* itself.

Justice O'Connor, dissenting in an opinion in which Chief Justice Rehnquist and Justice Kennedy joined, stated that the majority in *Bacchus* erred in not using a *Chevron* analysis and concluded that the new rule should not be applied retroactively. Apparently to remedy that error, Justice O'Connor would have applied a *Chevron* analysis in *Jim Beam* and concluded that *Bacchus* should not be applied retroactively in *Jim Beam.*

review violates basic norms of constitutional adjudication") (emphasis added), we believe that the Court's reasoning and holding in *Jim Beam* applies with equal force to the question of whether a new statute of limitations should be applied retroactively. Nothing in Justice Souter's opinion, or the concurring opinions of Justices Blackmun and Scalia, indicates that the Court's analysis in *Jim Beam* is intended to be limited to newly announced constitutional rules, and not applicable to newly announced interpretations of statutes or regulations, or newly announced procedural rules. To the contrary, the principles of equality and stare decisis upon which Justice Souter and Justice Blackmun rely in their concurring opinions are no less applicable to new rules of statutory construction or procedure. Indeed, in her dissenting opinion, Justice O'Connor concludes that Justice Scalia and Justice Blackmun "would abrogate completely the *Chevron Oil* inquiry and hold that all decisions must be applied retroactively in *all* cases," — U.S. at ——, 111 S.Ct. at 2451 (emphasis added), not just in cases involving questions of constitutional law.[5] Based on our reading of *Jim Beam* and *Lampf*, we conclude that, because the Supreme Court applied the new one-year/three-year rule to the litigants in *Lampf* itself, we must apply it to the cases before us.

Plaintiffs may argue that it would be inequitable to apply *Lampf* retroactively here, i.e., that the particular circumstances here make retroactivity more unfair to plaintiffs here than it was for respondents in *Lampf*. The new one-year/three-year rule announced in *Lampf*, however, must be applied here without engaging in a *Chevron* analysis or considering whether retroactive application would create more inequitable results for the plaintiffs before us than it did for the respondents in *Lampf*. As Justice Souter emphasized in *Jim Beam*, "principles of equality and stare decisis here [prevail] over any claim

based on a *Chevron Oil* analysis." —— U.S. at ——, 111 S.Ct. at 2446. Thus, "litigants [are not] to be distinguished for choice-of-law purposes on the particular equities of their claims to prospectivity: whether they actually relied on the old rule and how they would suffer from retroactive application of the new." *Id.* at ——, 111 S.Ct. at 2447. Justice Souter acknowledged that

> To this extent, our decision does limit the possible applications of the *Chevron Oil* analysis, however irrelevant *Chevron Oil* may otherwise be to this case. Because the rejection of modified prospectivity precludes retroactive application of a new rule to some litigants when it is not applied to others, the *Chevron Oil* test cannot determine the choice of law by relying on the equities of the particular case.

*Id.* at ——, 111 S.Ct. at 2447 (citations omitted). Nevertheless, "[o]nce retrospective application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application." *Id.* at ——, 111 S.Ct. at 2447–48.

Moreover, we note that in *Lampf*, Justice O'Connor, dissenting in an opinion joined by Justice Kennedy, objected to the majority's failure to consider the *Chevron* test in determining whether to apply the new rule retroactively. She observed that the

> Court has, on several occasions, announced new statutes of limitations. Until today, however, the Court had *never* applied a new limitations period retroactively to the very case in which it announced the new rule so as to bar an action that was timely under binding Circuit precedent. Our practice has been instead to evaluate the case at hand by the old limitations period, reserving the new rule for application in future cases.

—— U.S. at ——, 111 S.Ct. at 2786. Applying the *Chevron* test, Justice O'Connor found that "[a]ll three *Chevron* factors are

---

**5.** We also note that the Supreme Court remanded *Welch* for reconsideration in light of both *Lampf* and *Jim Beam*, suggesting that the Court's discussion of retroactivity in *Jim Beam* is applicable outside the context of a new consti-

tutional rule and is therefore relevant to the retroactivity issue—whether a new statute of limitations should apply retrospectively— presented in *Welch* and here.

met." —— U.S. at ——, 111 S.Ct. at 2787. She analyzed the factors as follows:

First, in adopting a federal statute of limitations, the Court overrules clearly established Circuit precedent.... Second, the Court explains that "the federal interes[t] in predictability" demands a uniform standard.... I agree, but surely predictability cannot favor applying retroactively a limitations period that the respondent could not possibly have foreseen. Third, the inequitable results are obvious. After spending four-and-one-half years in court and tens of thousands of dollars in attorney's fees, respondents' suit is dismissed for failure to comply with a limitations period that did not exist until today.

—— U.S. at ——, 111 S.Ct. at 2787. Justice O'Connor concluded, "the federal statute of limitations announced today should not be applied retroactively." *Id.*

Justice O'Connor thus dissented in part because the majority failed to engage in a *Chevron* analysis—an analysis that was not foreclosed by *Jim Beam*, as the Court in *Lampf* was considering application of a new rule in the first instance. Had the Court intended for its new rule to be applied prospectively, it could have engaged in a *Chevron* analysis and provided for prospective application. Rather, the Court applied the new one-year/three-year rule to the facts before it, indicating its intent that the new rule be applied retroactively without regard to *Chevron* or case-by-case equitable concerns.

In light of *Jim Beam* and Justice O'Connor's dissent, we reject the possibility that the majority in *Lampf* intended to leave the door open for prospective application of the new rule in special circumstances. We recognize that the facts in *Lampf* indicate that respondents apparently did not discover their securities fraud claims until af-

ter three years had already passed. Thus, respondents in *Lampf* did not, on the mistaken assumption that their actions were timely under the then-applicable statute of limitations, allow claims that would have been timely under *Lampf* to go stale. Nevertheless, as Justice O'Connor points out, the respondents in *Lampf* did rely to their detriment on the old limitations period because they spent over four years in court and tens of thousands of dollars in attorneys' fees, litigating claims they believed to be timely. It is therefore possible to conclude, as Justice O'Connor did, that under *Chevron* the new one-year/three-year rule should not have been applied retroactively in *Lampf*. Because the majority did not so conclude, and did not even discuss the issue, we conclude that use of a *Chevron* analysis here would be inappropriate and impermissible, and that the new one-year/three-year rule must be applied retroactively to the facts before us.[6]

As we have indicated, there is no dispute that plaintiffs' complaints were filed more than three years after the alleged § 10(b) and Rule 10b–5 violations occurred. Plaintiffs' § 10(b) and Rule 10b–5 claims are therefore time-barred and must be dismissed.

In the *Hanna* and *Kinzenbaw* complaints, plaintiffs have pleaded, in addition to their securities fraud claims, federal Lanham Act claims. In the *Barr, Bennett,* and *Vomacka* complaints, however, dismissal of the securities fraud claims complaints leaves only state law claims in those complaints. Accordingly, the Court must determine whether to retain jurisdiction over these complaints. The parties are directed to file letter briefs, not to exceed five pages in length, on this issue. Plaintiffs' brief is to be submitted within fifteen (15) days of the date of this order, defen-

---

6. Under prior Second Circuit precedent, we would have concluded that, absent exceptional circumstances, a new rule should be applied retroactively when the court announcing the new rule applies the new rule to the action before it. *See Gonzalez v. Home Ins. Co.,* 909 F.2d 716 (2d Cir.1990) ("when the Supreme Court, in announcing a new principle, itself applies it retroactively to the case at bar, gener-

ally ' "no sound reason exists for not doing so" ' in a later appeal.") (quoting *Welyczko v. U.S. Air, Inc.,* 733 F.2d 239, 241 (2d Cir.) (quoting *Holzsager v. Valley Hospital,* 646 F.2d 792, 797 (2d Cir.1981)), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984)); *Byrne v. Buffalo Creek Railroad Co.,* 765 F.2d 364 (2d Cir. 1985). Under that test, we would reach the same result here.

dant's brief will be due fifteen (15) days thereafter, and then plaintiffs will have five (5) days to submit a reply, if any.

### CONCLUSION

Plaintiffs' securities fraud claims are dismissed as time-barred. The parties are to file letter briefs, in accordance with the schedule outlined above, on the question of whether the Court should retain jurisdiction in *Barr*, *Bennett*, and *Vomacka*.

SO ORDERED.