**BORDEN, INC., Alfred S. Cummin, A.S. D'Amato, Ann Forrestal and W. Donald Nyland as Executors of the Estate of Frank V. Forrestal, deceased, Robert Gutheil, Jon Hettinger, David Kelly, Walter Kocher, Augustine Marusi, Ruth Marusi, Allan Miller, Bernard Nemtzow, Herman Peed, Edward I. Piernick, Joseph Saggese, Eugene Sullivan and Gloria Sullivan, Plaintiffs,**

v.

**SPOOR BEHRINS CAMPBELL & YOUNG, INC.; First Interstate Bank, Ltd.; First Interstate Services, Inc.; Kenneth R. Behrins, T. Richard Spoor, Robert L. Campbell and Michael D. Young, Defendants.**

No. 89 Civ. 8645 (WCC).

United States District Court, S.D. New York.

Nov. 15, 1991.

Bressler, Amery & Rothenberg, New York City (Bernard Bressler, Sara Yang Bosco, of counsel), for plaintiffs.

Sullivan & Cromwell, New York City (Philip L. Graham, Jr., John B. Reid-Dodick, Lisa J. Laplace, of counsel), for defendants.

## OPINION AND ORDER

CONNER, District Judge.

Plaintiff investors charge defendants with fraud in connection with the sale of securities. This action is currently before the Court on the motion of defendants First Interstate Bank, Ltd. and First Interstate Services, Inc. ("First Interstate") for summary judgment pursuant to Rule 56(b) Fed.R.Civ.P. as to the claims brought against them by plaintiff Augustine R. Marusi, the retired Chief Executive Officer of plaintiff Borden, Inc., a consumer products and chemical company. Plaintiff has cross-moved for leave to file a second amended complaint under Rule 15.

## BACKGROUND

The amended complaint in this action alleges, *inter alia*, various fraudulent and corrupt practices in connection with the sale of securities in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder. The amended complaint identifies as the primary wrongdoer in this action, Spoor Behrins Campbell & Young, Inc. ("SBCY"), a firm of investment advisors. The amended complaint identifies the moving defendants as successive parent corporations and sole stockholders of SBCY from May, 1983, to December 31, 1987, and asserts their liability under Section 10(b) and Rule 10b–5; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.; and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). The amended complaint further alleges claims against the moving defendants for the imposition of a constructive trust and for aiding and abetting SBCY's alleged commission of common law fraud and breach of fiduciary duty.

The genesis of this action can be traced back to 1978, when members of SBCY approached executives of plaintiff Borden offering to establish a program pursuant to which it would provide key Borden executives, including Marusi and the other individuals named above, with investment advice to be paid for by Borden on an annual *per capita* fee basis. Am. Cmplt. ¶ 26. According to the amended complaint, SBCY represented to Borden and Borden officials, that it was independent and was acting only in the best interests of the Borden executives who were the beneficiaries of its service. Am. Cmplt. ¶ 27. The gravamen of this action is the alleged failure of SBCY to disclose to Marusi and the other plaintiffs payments allegedly made to SBCY by organizers and promoters of investment ventures as consideration for SBCY's recommendations and sales of security interests to Marusi and the other named plaintiffs. Am. Cmplt. ¶ 34.

From 1979 through 1984, Marusi made a series of twelve investments through SBCY, ten of which he challenges in this action. Plaintiff asserts that no pre-investment materials he received disclosed any commission or payments to SBCY for selling to Marusi.[1] Op.Mem. at 18. Plaintiff further asserts that SBCY affirmatively denied receiving payments in offeree representative questionnaires issued in four of the ten subject transactions. Op.Mem. at 26. Moreover, plaintiff avers that subsequent to the challenged investments, in numerous filings with the SEC and Federal Reserve Board and in conversations with Borden officials, defendants actively concealed the commission payments received. Am. Cmplt. ¶¶ 46–63, 79.

Plaintiff made the last investment he challenges here on August 13, 1984, and he filed the complaint commencing this lawsuit more than five years later on December 28, 1989.

## DISCUSSION

### 1. Applicable Legal Requirements

A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact." Fed. R.Civ.P. 56(c); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). It must establish that there is a "genuine issue for trial." *Id.* at 587, 106 S.Ct. at 1356. "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable infer-

ences against the moving party." *Knight,* 804 F.2d at 11. The inquiry under a motion for summary judgment is thus the same as that under a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### 2. Plaintiffs' Section 10(b) Claim

Defendants move for summary judgment on plaintiff's § 10(b) claim on the grounds that this claim is time-barred. The Supreme Court has recently decided that the limitations period applicable to implied private claims under § 10(b) of the Exchange Act and Rule 10b–5 is the one-and-three-year structure applicable to express causes of action under the Exchange Act. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Thus, the Court held that "litigations instituted pursuant to § 10(b) and Rule 10b–5 therefore must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *See id.*, 111 S.Ct. at 2782. Significantly, the Supreme Court applied its holding retroactively in *Lampf*, thereby making the plaintiff-respondents' lawsuit untimely. *See id.* at 2782.

In *James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), decided the same day as *Lampf*, the Court addressed the issue of retroactivity with respect to newly announced rules of law, declaring that it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so and that "[o]nce retroactive application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application." *See id.*, 111 S.Ct. at 2447–2448. In light of *Beam*, the Second Circuit has

---

**1.** Defendants strenuously deny plaintiff's claims, arguing that SBCY made varying degrees of disclosure with respect to all the invest-

ments and in some cases clearly disclosed the commissions received.

recently confirmed that *Lampf* will be applied retroactively in this Circuit. *See Welch v. Cadre Capital,* 946 F.2d 185 (2d Cir.1991).[2]

In the instant case plaintiff does not contest *Lampf's* retroactive effect. Instead, plaintiff insists that the doctrine of equitable estoppel survived *Lampf* and bars First Interstate from invoking *Lampf's* three-year statute of repose. Plaintiff's argument derives in large part from the Court's failure in *Lampf* to comment explicitly on the availability of equitable estoppel to avoid the three-year period of repose established by the Court. The Court noted only that the three-year period is "a period of repose inconsistent with tolling" and later reiterated the point that "tolling principles do not apply to [the three-year] period." *Lampf,* 111 S.Ct. at 2782.

In further support of its contention, plaintiff notes that the one commentator cited by the Supreme Court in support of its rejection of equitable tolling in *Lampf* actually suggests that the doctrine of equitable estoppel may extend that statutory period. *See* Op.Mem. at 65 (quoting Bloomenthal, The Statute of Limitations and Rule 10b–5 Claims: A Study of Judicial Lassitude, 60 U.Colo.L.Rev. 291–92 (1989)).

Plaintiff fails to note, however, that the one post-*Lampf* decision to address this issue found equitable estoppel inconsistent with *Lampf's* holding. In *Anixter v. Home–Stake Prod. Co.,* 939 F.2d 1420 (10th Cir.1991), the Tenth Circuit applied the statutory one-and-three-year rule of section 13 of the Securities Act of 1933 to plaintiffs 1933 Act claims and then the *Lampf* rule to plaintiffs' Rule 10b–5 claims. In so doing, the appellate court overturned the lower court's holding, which was based on the jury's findings, that defendants were equitably estopped from raising the statute of limitations defense. After detailed analysis of the relevant congressional history, the appellate court concluded:

> [W]e believe the more accurate analysis [of Section 13] excludes the application of [equitable estoppel] when the consequence operates to trump a clear outer limit intended by Congress. "Unless the 'in no event more than three' language cuts off claims of tolling and estoppel at three years, however, it serves no purpose at all—what other function could be served by such language in a statute that starts the time on discovery?" We therefore conclude that the doctrine of equitable estoppel is not available to avoid the statute of repose established by Section 13.

*Anixter,* 939 F.2d at 1436 (quoting *Short v. Belleville Shoe Mfg. Co.,* 908 F.2d 1385, 1391). Once it had decided the pivotal issue as to Section 13, the Tenth Circuit had little difficulty, following *Lampf,* deciding that the same reasoning applied to the court-imposed limitation for Rule 10b–5 actions: "based on our prior discussion of Section 13 to plaintiffs' express causes of action, we hold that plaintiffs' Section 10(b) and Rule 10b–5 claims are untimely and must be dismissed." *Id.* at 1441.

In addition to the Tenth Circuit's holding in *Anixter,* a Seventh Circuit decision cited with approval in *Lampf* also supports this Court's refusal to apply equitable estoppel to the instant claims. In *Lampf,* the Supreme Court stated that it "agreed with every Court of Appeals that ha[d] been

---

**2.** The Supreme Court vacated and remanded the Second Circuit's previous decision in *Welch v. Cadre Capital,* 923 F.2d 989 (2d Cir.1991), which rejected retroactive application of the uniform statute of limitations for Section 10(b) claims, for reconsideration in light of *Lampf* and *Beam. See Northwest Savings Bank, PaSA v. Welch,* —— U.S. ——, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991). Even before the Second Circuit decided *Welch* on remand, a number of courts had already decided to apply *Lampf* retroactively. *See Boudreau v. Deloitte, Haskins & Sells,* 942 F.2d 497 (8th Cir.1991) (per curiam); *Berning v.*

*A.G. Edwards & Sons, Inc.,* 774 F.Supp. 480 (N.D.Ill.1991); *Khindri v. Yogel,* No. 87–6121, 1991 WL 175483, 1991 U.S.Dist. LEXIS 12596 (E.D.Pa. Sept. 5, 1991); *Haggerty v. Comstock Gold Co.,* 770 F.Supp. 216 (S.D.N.Y.1991); *Barr v. McGraw–Hill,* 770 F.Supp. 855 (S.D.N.Y.1991); *Klein v. Goetzmann,* 770 F.Supp. 78 (N.D.N.Y.1991); *Vito v. Prudential–Bache Securities, Inc.,* No. 90–7662, 1991 WL 131186, 1991 U.S.Dist. LEXIS 9503 (E.D.Pa. July 11, 1991); *Sanders v. Keefe,* No. 90–4310, 1991 WL 133706, 1991 U.S.Dist. LEXIS 9519 (N.D.Ill. July 11, 1991).

called upon to apply a federal statute of limitations to a § 10(b) claim...." *Lampf,* 111 S.Ct. at 2781. In support, the Court cited, *inter alia, Short v. Belleville Shoe Mfg. Co.,* 908 F.2d 1385 (7th Cir.1990).[3] In *Belleville Shoe,* the Seventh Circuit addressed the question at issue here, holding that equitable estoppel is not available to extend the three-year repose period; the court reasoned that "[u]nless the 'in no event more than three' language cuts off claims of tolling and estoppel at three years ... it serves no purpose at all." 908 F.2d at 1391.

Here, as in *Belleville Shoe* and *Anixter,* the Court finds that the three-year period of repose acts as an absolute bar to plaintiff's Section 10(b) claims.[4] The most recent violation of Section 10(b) of which plaintiff complains occurred in August of 1984. Accordingly, plaintiff was required to commence an action on or before August of 1987, three years after the occurrence of the conduct alleged to have violated the statute. Since plaintiff's original complaint was filed in December of 1989, his Section 10(b) claims must now be dismissed.

### 3. Plaintiff's RICO claim

Defendants also seek to dismiss plaintiff's RICO claims as time-barred. In *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the Supreme Court held that a four-year statute of limitations should apply to all civil RICO actions regardless of the predicate acts involved. Subsequently, in *Bankers Trust Co. v.*

*Rhoades,* 859 F.2d 1096 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989), the Second Circuit held "each time a plaintiff suffers an injury caused by a violation of 18 U.S.C. § 1962, a cause of action to recover damages based on that injury accrues to plaintiff at the time he discovers or should have discovered the injury." *Id.* at 1102.

■ This limitations standard, in contrast to the 10b–5 statute of repose discussed above, is subject to equitable tolling.[5] Nonetheless, defendants argue vigorously that this Court should grant summary judgment on plaintiff's RICO claims. Specifically, defendants contend that the four-year RICO statute of limitations begins to run when the plaintiff should have discovered his RICO injury in the exercise of "reasonable diligence." *Griffin v. McNiff,* 744 F.Supp. 1237, 1255 (S.D.N.Y.1990) (citing *Armstrong v. McAlpin,* 699 F.2d 79, 8 (2d Cir.1983)). Defendants further contend that the critical point is not "the time at which plaintiff becomes aware of all of the various aspects of the alleged fraud, but rather ... the time at which plaintiff should have discovered the general fraudulent scheme." *See* Def.Rep. Mem. at 20–21 (citing *Arneil v. Ramsey,* 550 F.2d 774, 780 (2d Cir.1977)).

Defendants next contend that from the beginning of his relationship with SBCY in 1979, by virtue of offering documents that he received, signed, and held in his possession, Marusi was on notice that SBCY received various forms of monetary compen-

---

**3.** The Court also cited *In re Data Access Systems Securities Litigation,* 843 F.2d 1537 (3d Cir.) (en banc), *cert. denied,* 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988) and *Ceres Partners v. GEL Associates,* 918 F.2d 349 (2d Cir.1990). *See* 111 S.Ct. at 2781.

**4.** Plaintiff cites two cases, *Bomba v. W.L. Belvidere, Inc.,* 579 F.2d 1067 (7th Cir.1978) and *Katz v. Amos Treat & Co.,* 411 F.2d 1046 (2d Cir. 1969), in support of his assertion that equitable estoppel applies to the 10–5 claims. These cases are inapposite, however, inasmuch as they were decided more than ten years before any Court of Appeals had applied a uniform federal rule to Section 10(b) and Rule 10b–5 actions. In addition it should be noted that *Katz* involved equitable tolling not equitable estoppel and *Bom-*

*ba,* a case which applied equitable estoppel to claim under the Interstate Land Sales and Full Disclosure Act, 15 U.S.C. §§ 1701–17, clearly can not be applied to a securities fraud question following *Belleville Shoe.*

**5.** As the Supreme Court recently noted, "time requirements in law suits ... are customarily subject to 'equitable tolling'" *Irwin v. Veterans Administration,* — U.S. —, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990), citing *Hallstrom v. Tillamook County,* 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989). In the context of rule 10b–5, however, the three-year period of repose is derived from the language of the Exchange Act itself and supercedes the normal rule. *See supra* Section 2.

sation from general partners and their affiliates. Thus, defendants conclude that plaintiff was on notice, or by virtue of due diligence should have been on notice, of the alleged fraud at the time he made each of the investments at issue and therefore the statute of limitations cannot be tolled in the instant case.

While defendants spend an inordinate amount of time in their papers trying to prove the essentially factual issue of what plaintiff knew and when plaintiff knew it, this Court is reluctant to engage in the type of fact-finding defendants request on a motion for summary judgment.[6] "Issues of due diligence and constructive knowledge depend on inferences drawn from the facts of each particular case—similar to the type of inferences that must be drawn in determining intent and good faith." *Robertson v. Seidman & Seidman*, 609 F.2d 583, 591 (2d Cir.1979). As the Second Circuit further noted in *Friedman v. Meyers*, 482 F.2d 435, 439 (2d Cir.1973): "We have repeatedly stated that summary judgment is particularly inappropriate where, as here, it is sought on the basis of 'inferences which the parties seek to have drawn [as to] questions of motive, intent and subjective feelings and reactions.'"

Far more damaging to their motion, however, is defendants' complete failure to address the principal argument in plaintiff's opposition brief. The very inquiry into Marusi's due diligence that defendants request of the Court is wholly immaterial, as plaintiff strenuously argues, because Marusi has alleged active concealment of the fraud by defendants.[7] The Second Circuit, as well as several other courts, has adopted the rule that where there is active conceal-

ment, a plaintiff's due diligence is irrelevant. *See Robertson v. Seidman & Seidman*, 609 F.2d at 593 (2d Cir.1979); *Sperry v. Barggren*, 523 F.2d 708, 711 (7th Cir. 1975); *Tomera v. Galt*, 511 F.2d 504, 510 (7th Cir.1975).

In adopting the active/passive distinction, the Second Circuit explained:

> Under the federal equitable tolling doctrine, the active concealment of fraudulent conduct tolls the statute of limitations in favor of the defendant party until such time as he actually knew of the fraudulent conduct of the opposing party.

*Robertson v. Seidman & Seidman*, 609 F.2d at 593 (citing *Atlantic City Electric Co. v. General Electric*, 312 F.2d 236, 239 (2d Cir.1962) (en banc), *cert. denied*, 373 U.S. 909, 83 S.Ct. 1298, 10 L.Ed.2d 411 (1963).

In the instant case, plaintiff's allegations of active concealment are sufficient to create a genuine issue of material fact as to the tolling of the applicable statute of limitations. *See Huang v. Sentinel Gov't Sec.*, 709 F.Supp. 1290, 1299 (S.D.N.Y.1989); *Clute v. Davenport Co.*, 584 F.Supp. 1562, 1579 (D.Conn.1984). Marusi has alleged not only an initial deception on the part of defendants, but also subsequent affirmative steps to prevent discovery of the scheme. Specifically, plaintiff alleges, *inter alia*, that defendants affirmatively denied, in numerous SEC filings and filings with the Federal Reserve Board, that it received payments from organizers and promoters of investment ventures as consideration for recommendations and sales of security interests

6. Defendants place a great deal of emphasis on *Marlow v. Gold*, Fed.Sec.L.Rep. (CCH) ¶ 96,112, 1991 WL 107268 (S.D.N.Y. June 6, 1991). In that case, the court did grant summary judgment based on defendant's argument that plaintiff's RICO claim was time barred. *Marlow*, however, does not control here for two reasons: First, while defendants urge that *Marlow* is a close factual analogue to the present action, that case concerned an alleged failure to disclose the risk factors involved in an investment, and did not focus on defendant's failure to disclose its receipt of a commission, even though such a commission was apparently received. Second, for reasons that remain unclear, *Marlow* did not consider the active concealment doctrine dis-

cussed below and thus conducted the type of extensive analysis of plaintiff's due diligence that is unnecessary here in light of plaintiff's allegations of active concealment.

7. "Passive concealment occurs when the defendant commits fraud but then takes no further action to disguise the fraud from the plaintiff. In contrast, active concealment occurs when the defendant actually takes affirmative steps in addition to the original fraud to prevent plaintiff from discovering the scheme." *Clute v. Davenport Co.*, 584 F.Supp. 1562, 1579 n. 4 (D.Conn. 1984).

to Marusi and the other named plaintiffs. Am. Cmplt. ¶¶ 46–63. In addition, plaintiff alleges several knowingly false statements made by SBCY officials in an attempt to conceal the payments they are alleged to have received. Am. Cmplt. ¶ 79. Accordingly, defendants' summary judgment motion on plaintiff's RICO claim is denied.

4. Jurisdiction over Pendent State–Law Claims

█ On the assumption that all of the other federal claims would be dismissed, the moving defendants urge that the Court dismiss the remaining pendent state-law claims. Because this Court declines to grant defendants' summary judgment motion with respect to the RICO claims, federal claims remain in the case. Thus, this Court will continue to exercise pendent jurisdiction over plaintiff's state-law claims.

5. Plaintiffs' Motion to Amend Complaint

All the named plaintiffs in this action have moved to amend the Amended Complaint, pursuant to Fed.R.Civ.P. 15(a) by adding four new counts and by modifying one existing count. Specifically, plaintiffs move to add new causes of action against First Interstate for conspiracy to violate § 10(b) of the Exchange Act and Rule 10b–5; against all defendants for conspiracy to commit common law fraud; against all defendants for conspiracy to breach fiduciary duty; and against First Interstate for conspiracy to cause SBCY to receive commercial bribes.

█ Rule 15 must be construed to allow courts liberally to grant leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In deference to this liberal standard, defendants offer no objections as to plaintiffs' proposed amendments except for plaintiffs' new count asserting a conspiracy to violate the federal securities laws. Defendants aver that because plaintiffs' securities claims are time barred under *Lampf,* any conspiracy claims with respect to those alleged violations must necessarily fail as well. The Court agrees. In order to prove conspiracy in securities fraud violations, plaintiff must establish an underlying securities violation. *See Hill v. Equitable*

*Bank,* 655 F.Supp. 631, 645–46. (D.Del. 1987), *aff'd,* 851 F.2d 691 (3d Cir.1988), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989). Because this Court has dismissed plaintiffs' 10(b) claims as time-barred, permitting new allegations of a conspiracy to violate Section 10(b) would be futile. Accordingly, Count III of the proposed Second Amended Complaint and that part of paragraph 320 relating to Count III will not be permitted. *See Posadas de Mexico, S.A. de C.V. v. Dukes,* 757 F.Supp. 297, 300 (S.D.N.Y.1991); *Friedman v. Chesapeake & O.R. Co.,* 261 F.Supp. 728 (S.D.N.Y.1966), *aff'd,* 395 F.2d 663 (2d Cir.1968), *cert. denied,* 393 U.S. 1016, 89 S.Ct. 619, 21 L.Ed.2d 561.

Conclusion

For the reasons stated above, defendants' motion for summary judgment is granted in part and denied in part. Plaintiff's cross-motion to amend the complaint is granted with those exceptions enumerated above.

SO ORDERED